JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-0070 JGB (DTBx)** | Date | April 24, 2025 |
|---|---|---|---|
| Title | ***Jonathan Brancati v. Ford Motor Company et al.*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 17); and (2) VACATING the April 28, 2025 Hearing (IN CHAMBERS)

Before the Court is a motion to remand filed by plaintiff Jonathan Brancati ("Plaintiff" or "Brancati"). ("Motion," Dkt. No. 17.) The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The hearing on April 28, 2025 is **VACATED**.

## I. BACKGROUND

On December 3, 2024, Plaintiff filed a complaint in the California Superior Court for the County of Riverside against defendant Ford Motor Company ("Defendant" or "Ford") and Does 1-10 alleging (1) breach of express warranty under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.* ("Song-Beverly Act") and (2) breach of implied warranty under the Song-Beverly Act. ("Complaint," Dkt. No. 1-2.) Plaintiff served Defendant on December 13, 2024. ("NoR," Dkt. No. 1.)

On January 10, 2025, Defendant removed the action to this Court asserting diversity jurisdiction under 28 U.S.C. Section 1332. (NoR.) On February 24, 2025, Plaintiff filed the Motion. (Motion.) In support, Plaintiff filed a declaration of attorney Chelsea D. Hollins ("Hollins Decl.," Dkt. No. 17 Ex. A.) On March 10, 2025 Defendant opposed the Motion. ("Opposition," Dkt. No. 19.) In support, Defendant filed a declaration of attorney Hang A. Do. ("Do Decl. for Opp.," Dkt. No. 19-1.) On March 17, 2025, Plaintiff replied. ("Reply," Dkt. No. 20.)

## II.  FACTUAL ALLEGATIONS

In January 2024, Plaintiff acquired a new 2024 Ford Maverick ("Vehicle").  (Complaint ¶ 4.)  Along with the acquisition of the Vehicle, Plaintiff received written warranties and other express and implied warranties including, but not limited to, warranties from Defendant that Defendant would maintain the utility or performance of the vehicle, service or repair the vehicle to warranty after a reasonable number of attempts, repair the vehicle within a reasonable time, complete repairs within 30 days, the vehicle would pass without objection in the trade under the contract description, the vehicle is fit for the ordinary purpose[] for which such goods are used, adequately contained, packaged, and labeled, and conforms to the promises or affirmations of fact made on the container of label.  (Id. ¶ 15.)

The Vehicle was delivered to Plaintiff with serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty including, but not limited to, defects relating to severe shaking under hard acceleration and front axle vibrating.  (Id. ¶ 11.)  Plaintiff seeks the actual price paid or payable by Plaintiff, a civil penalty, and attorneys' fees.  (Id. ¶¶ 20-22.)

## III.  LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction.  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute."  Gunn v. Minton, 568 U.S. 251, 256 (2013).  As such, a defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000.  See 28 U.S.C. §§ 1331, 1332.  "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff."  In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008).

Removal statutes are to be strictly construed, Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety.  Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996); Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 683–85 (9th Cir. 2006); see also Calif. ex. rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 ("[T]he burden of establishing federal jurisdiction falls to the party invoking the statute[.]").  "[A]ny doubt about the right of removal requires resolution in favor of remand."  Moore–Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) (citing Gaus, 980 F.2d at 566).

When a state-court complaint alleges on its face "damages in excess of the required jurisdictional minimum," the amount pled controls unless it appears "to a legal certainty" that the claim is for less than the jurisdictional amount.  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 402-404 (9th Cir. 1996).  Conversely, "[w]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount

in controversy exceeds the jurisdictional threshold." Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 793 (9th Cir. 2018). This sum is determined as of the date of removal. Id. at 790. "[T]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [the] defendant's liability." Lewis v. Verizon Comm'ns. Inc., 627 F.3d 395, 400 (9th Cir. 2010). Accordingly, "in assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" Campbell v. Vitran Express, Inc., 471 F. App'x. 646, 648 (9th Cir. 2012) (quoting Kenneth Rothschild Trust v. Morgan Stanley, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

The removing party need only include a "short and plain statement" setting forth "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 88 (2014). Where the plaintiff contests the removing defendant's allegations, however, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in controversy requirement has been satisfied." Id. at 82.

## IV.   DISCUSSION

Defendant removed the action on the basis of diversity jurisdiction; Plaintiff argues that the Court lacks subject matter jurisdiction over the case because the amount in controversy is less than $75,000. (See Motion; Reply.)

### A.  Complete Diversity

Defendant provides evidence that Plaintiff is a citizen of California, while Ford is a citizen of Delaware and Michigan. (Notice of Removal ¶¶ 29-31.) Diversity of citizenship is uncontested. (See Motion at 3.)

### B.  Amount in Controversy

The Court finds that the amount in controversy is not facially evident from the Complaint. The Complaint does not specify any monetary value sought; the civil case cover sheet reflects the "amount demanded exceeds $35,000." (See Dkt. No. 1-4 at 7.) There are no specific damages pled in the body of the Complaint or prayed for in the Prayer for Relief. As such, it does not allege "a sufficiently specific total in amount in controversy." Guglielmino v. McKee Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007). Further, "it is unclear whether *all* [the] damages are subsumed within the request" for damages in excess of $35,000. Schneider v. Ford Motor Co., 441 F. Supp. 3d 909, 913 (N.D. Cal. 2020) (emphasis in original). Accordingly, the Court "must determine if [Defendant] ha[s] shown by a preponderance of the evidence that the amount in controversy exceeds $75,000." Id.

**1. Actual Damages**

Actual damages pursuant to the Song-Beverly Act are the "amount equal to the actual price paid or payable by the buyer," less the reduction in value "directly attributable to use by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B)-(C).

To establish the actual price paid or payable pursuant to the statute, Plaintiff relies on an undisputed Retail Installment Sales Contract. (See Motion at 6; "RISC," Dkt. No. 1-5, Ex. D.) The vehicle purchase price can demonstrate actual damages under the Song-Beverly Act, particularly when a plaintiff seeks recovery of "the entire contract price." Schneider, 441 F. Supp. 3d at 914–15; see also Luna v. FCA US LLC, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021) ("Courts routinely find that an undisputed Retail Installment Sales Contract can establish actual damages.").

Here, "[b]ecause the record does not show" whether Plaintiff has "made all the installment payments," the Court cannot determine whether Plaintiff has "paid all the finance charges that are included in the total sale price of the Vehicle." Luna, 2021 WL 4893567, at *7. The Court, therefore, "follows other district courts in concluding that it is more appropriate to use the total cash price listed in the [RISC]"—here, $40,125.00[1]—as the initial amount for the calculation of actual damages. See Luna, 2021 WL 4893567, at *7; (RISC at 2.)

Next, under the Song-Beverly Act, any restitution "must be reduced by the amount directly attributable to use (as measured by miles driven) by the consumer prior to the first repair (or attempted repair) of the problem as pro-rated against a base of 120,000 miles." Alvarado, 2017 WL 2495495, at *4; Cal. Civ. Code § 1793.2(d)(2)(C). The RISC lists the odometer reading as 18 miles at the time of purchase. (RISC at 1.) Cal. Civ. Code section 1793.2(d)(2)(C) provides a formula to calculate the mileage offset:

$$\frac{N}{120,000} \times cash\ price$$

(N = number of miles driven before first repair related to the alleged noncomformity)

---

[1] Plaintiff argues that the Court should use the amount in monthly payments he has made towards his vehicle as his damages – roughly $23,928.74 – instead of the purchase price because he financed his vehicle. However, as other courts have explained, the monthly payment distinction is only relevant when a plaintiff has leased their car. Where, as here, a plaintiff purchased their car, damages up to the purchase price are necessary because Plaintiff has an outstanding loan. Thus, return to status quo must include paying off the loan balance, and so the Court uses the total cash price of the vehicle. Canesco v. Ford Motor Co., 570 F. Supp. 3d 872, 896 (S.D. Cal. 2021) ("Thus, return to status quo must include paying off the loan balance. If it did not, the consumer would have his or her down payment and monthly payments returned but left with a loan that still needed to be repaid and no funds to repay it, which would not put the consumer in the position he or she was in before buying the vehicle.").

Based on repair records, Defendant states that the vehicle was presented for defect at 15,028 miles, and purchased with 18 miles on the odometer. (See Dkt. No 1-6.) Plaintiff 's only response is a boilerplate argument that Defendant did not account for the mileage offset, despite Defendant accounting for it in its Notice of Removal. (NoR ¶ 22.) As such, Brancati appears to have driven the Vehicle 15,010 miles before the first attempted repair. The Court applies the following formula to generate the statutory offset:

$$\frac{15,010}{120,000} \times \$40,125$$

This results in an offset of $5018.97. Subtracted from the cash price of $40,125 the Court finds that $35,106.03, is the appropriate measure of damages allegedly suffered by Martinell under the Song-Beverly Act.

### 2. Civil Penalties

Plaintiff may be entitled to a civil penalty no greater than twice the amount of actual damages, but only if Ford's violations were willful. See id. (citing Cal Civ. Code § 1794 (c)). However, in the jurisdictional analysis, the civil penalty "cannot simply be assumed"; instead, "the defendant must make some effort to justify the assumption." Id. (quoting D'Amico v. Ford Motor Co., 2020 WL 2614610, at *3 (C.D. Cal. May 21, 2020). Many courts, including this one, do not include civil penalties in the jurisdictional analysis "unless the removing defendant makes some showing regarding the possibility of civil damages." See Savall v. FCA US LLC, 2021 WL 1661051, at *3 (S.D. Cal. Apr. 28, 2021) (collecting cases).

Here, Ford argues that the Court should include the full civil penalty in the amount in controversy because of Brancati's allegations of Ford's "willful refusal to comply with its statutory obligations under the Act." (See Opposition at 7; Complaint ¶¶ 18, 21.) However, Ford provides no support for the likelihood that a civil penalty based on its willfulness would actually be awarded in this case, or that the full civil penalty would be awarded. See Savall, 2021 WL 1661051, at *3; see also D'Amico, 2020 WL 2614610, at *3 (declining to include civil penalties in the amount in controversy because "Defendant points only to Plaintiff's allegation that she should recover a civil penalty, and four jury verdicts awarding civil penalties[]"). Ford does point to Plaintiff's allegations of a severe issue with the car, but provides no support for the proposition that this is the type of case where civil penalties would be awarded. The Court, therefore, will "not simply assume that a civil penalty will be awarded," especially considering that "the removal statute is strictly construed against removal jurisdiction." See D'Amico, 2020 WL 2614610, at *3.

//
//
//
//

### 3. Attorneys' Fees

Finally, Ford argues that Brancati's request for attorneys' fees should be included in the amount-in-controversy calculation. (See Opposition at 8-9.)

Courts generally include attorneys' fees recoverable by statute in determination of the amount in controversy. Fritsch, 899 F. 3d at 794 ; see also Guglielmino, 506 F.3d at 700; Galt G/S. v. JSS Scandinavia, 142 F.3d 1150, 1155–56 (9th Cir. 1998). "The removing defendant, however, must use 'summary-judgment-type evidence' to show that it is 'more likely than not' that the amount in controversy (including attorneys' fees) exceeds $75,000." Schneider, 441 F. Supp. 3d at 914; see also Reyes v. Staples Off. Superstore, LLC, 2019 WL 4187847, at *4 (C.D. Cal. Sept. 3, 2019) ("[C]ourts should still reject a defendant's calculation of future attorneys' fees if it fails to satisfy its burden of proof using 'summary-judgment-type evidence'.") (citing Fritsch, 899 F.3d at 795)). In Schneider, the court found insufficient the defendant's submission of a single declaration that "claims for attorneys' fees in these cases regularly approaches or exceeds $50,000." 441 F. Supp. 3d at 914. Evidence of a recent fee award granted to the plaintiff's counsel was also inadequate. Id. The defendants' claim "that the same counsel appears in each case and that the subject-matter of the cases are the same" failed "to provide the Court with specific evidence showing that the attorneys' fees *in this case* are 'more likely than not' to exceed $75,000." Id. (emphasis in original).

Here, Ford fails to meet its burden. Ford merely asserts via its Notice of Removal and related declaration that the Song-Beverly Act allows for the recovery of attorneys' fees, which regularly exceed $15,000. (See Notice of Removal ¶ 26; "Do Decl. for Notice of Removal," Dkt. No. 1-1 ¶ 15.) However, Ford does not provide enough evidence for attorneys' fees in this case and instead relies on bare assertions made in the Do Declarations. See Schneider, 441 F. Supp. 3d at 914 ("The removing defendant, however, must use 'summary-judgment-type evidence' to show that it is 'more likely than not' that the amount in controversy (including attorneys' fees) exceeds $75,000."); (Do Decl. for Notice of Removal; Do Decl. for Opp.) Ford erroneously relies on the fact that Plaintiff's counsel's firm requested certain fees in other Song-Beverly Act cases without analogizing the facts or circumstances of this case to these potentially relevant cases. See Schneider, 441 F. Supp. 3d at 915 ("All that Defendants claim is that the same counsel appears in each case and that the subject-matter of the cases are the same. They do not, however, compare or contrast the litigation strategies or the litigation timelines of the two cases."). As such, the Court concludes that attorneys' fees cannot be used to satisfy the amount-in-controversy requirement.

In sum, because civil penalties will not be assumed and attorneys' fees are far too speculative, Defendant fails to establish, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. This Court, therefore, lacks subject matter jurisdiction over the Complaint. Accordingly, the Court **GRANTS** the Motion and **REMANDS** this action to the California Superior Court for the County of Riverside.

## V.  CONCLUSION

For the above reasons, the Court **ORDERS** as follows:

1. Plaintiff's Motion is **GRANTED**.

2. This action is **REMANDED** to the California Superior Court for the County of Riverside, and the Clerk of the Court is **DIRECTED** to close this case.

3. The Court **VACATES** the April 28, 2025 hearing.

**IT IS SO ORDERED.**